# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 19-0277V
UNPUBLISHED

| | |
|---|---|
| DAISY MCCRAY,<br><br>        Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>        Respondent. | Chief Special Master Corcoran<br><br>Filed: August 31, 2021<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Guillain-Barré Syndrome<br>(GBS) |

*Jessica Olins*, Maglio Christopher & Toale, PA, Washington, DC, for Petitioner.

*Emilie Williams*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION AWARDING DAMAGES[1]

On February 21, 2019, Daisy McCray filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges that she suffered Guillain Barré syndrome ("GBS") as a result of receiving an influenza ("flu") vaccination on September 29, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters, and although Respondent conceded entitlement, the parties could not informally resolve damages.

For the reasons set forth below, and after hearing argument from the parties, I find that Petitioner is entitled to compensation in the amount **$244,390.18**, representing

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

**$180,000.00** for actual pain and suffering, **$37,711.04** for loss of earnings, and **$6,679.14** for her past unreimbursable medical expenses.

## I.     Relevant Procedural History

Approximately 13 months after this case was initiated, Respondent filed a Rule 4(c) Report, on March 23, 2020, conceding that Petitioner was entitled to compensation. ECF No. 26. A ruling on entitlement was issued on the same day. ECF No. 27. The parties thereafter attempted to informally resolve damages but were unable to do so completely, differing particularly on the amount of pain and suffering to be awarded. ECF No. 41. A scheduling order was issued on January 7, 2021 (ECF No. 42), regarding the briefing of disputed damages issues, and the parties filed their respective briefs (ECF Nos. 45-46 ("Br."), 48 ("Opp."), and 49 ("Reply")). Petitioner argues that in light of her pain and suffering and emotional distress, and the likelihood that her symptoms will continue for the remainder of her life, an award of $180,000.00 for her past pain and suffering and $1,000 per year for her future pain and suffering for her life expectancy of 20.7 years (reduced to net present value) is appropriate. Br. at 27. Respondent, on the other hand, proposes that an award of $122,500.00 is appropriate given Petitioner's more modest course of GBS, her improvement with treatment and her overall recovery. Opp. at 1. Both parties have agreed to an award for Ms. McCray's lost earnings and past unreimbursable medical expenses. *Id*.

I proposed that the parties be given the opportunity to argue their positions at a motions hearing, at which time I would decide the disputed damages issues. ECF. No. 51. That hearing was held on August 27, 2021,[3] and the case is now ripe for a determination.

## II.    Relevant Medical History

A complete recitation of the facts can be found in the Petition, the medical records, the parties' pre-hearing briefs, and in Respondent's Rule 4(c) Report. In brief summary, Ms. McCray was 62 years-old when she received a flu vaccine on September 29, 2017, in Charlotte, North Carolina. Petitioner's Exhibit ("Ex.") 10 at 1. Her prior medical conditions included recurrent herpes zoster (shingles) affecting the left buttock, complicated by post-herpetic neuralgia for which she took Neurontin. Ex. 2 at 3-8, 28-32, 60-64. From March 16, 2016, through June 8, 2017, Ms. McCray saw her internist, Dr. Reshma Vora, for ongoing treatment of her shingles. *See generally* Ex. 2.

---

[3] At the end of the hearing held on August 27, 2021, I issued an oral ruling from the bench on damages in this case. That ruling is set forth fully in the transcript from the hearing, which is yet to be filed with the case's docket. The transcript from the hearing is, however, fully incorporated into this Decision.

On October 13, 2017, approximately two weeks after receiving the flu vaccine at issue, Ms. McCray presented to the emergency room at Carolinas Medical Center where she reported an unsteady gait which resulted in her falling at home. She also reported a feeling of numbness in her fingers and toes for the prior three days. Ex. 2 at 1319. The ER physician suspected Ms. McCray's symptoms were secondary to her abruptly discontinuing her medication, Neurontin, two weeks prior and recommended that she restart the medication and gradually wean off. *Id*. at 1319-20.

Ms. McCray returned to the ER less than two days later, on October 15, 2017, complaining of persistent nausea and vomiting, hand and foot tingling, and weakness in her legs. Ex. 2 at 1373. She stated she was unable to support her body weight. *Id*.

After being admitted to the hospital, Ms. McCray's symptoms worsened, and she developed facial weakness and upper extremity weakness. Ex. 2 at 1463. After an extensive workup, Ms. McCray was diagnosed with atypical GBS and was treated with IVIG therapy. *Id*. at 1388-91, 1411, 1463. Her physicians also noted her recent flu vaccination. *Id*. at 1148.

From October 27, 2017, through November 17, 2017, Ms. McCray underwent intensive inpatient physical and occupational therapy. Ex. 2 at 79. She was discharged on November 17, 2017, with continuing mild right facial weakness, neuropathic pain, and muscle cramps. *Id*. By this time, she was able to walk using a rolling walker and demonstrated an increased ability to ambulate up and down stairs. *Id*. at 82. However, Ms. McCray continued to have a decrease in her lower extremity strength which limited her balance and ability to ambulate without supervision and cues. *Id*.

Ms. McCray received home-based physical and occupational therapy services from November 20, 2017, through December 21, 2017. Ex. 3 at 5-8. Over the next few months, she continued to follow up with her physicians who noted slow, but general improvement in her condition. It was recommended that Ms. McCray continue with physical therapy. Ex. 2 at 2179-83, 2294-97.

Most recently, Ms. McCray continues to have issues with her balance, leg weakness, fatigue, and breathlessness. *See generally*, Exs. 23-26. In her affidavit and in her "day-in-the-life" home video (presented during the hearing), Ms. McCray explained and demonstrated her residual symptoms, including the neuropathy in her fingers, her unsteadiness, and generalized joint weakness. Exs. 10, 26. She explained how the GBS has had a direct impact on her daily activities due to increased pain and showed the numerous prescription medication bottles with the medication she was taking to treat her symptoms. Ex. 10 at 3, ¶ 17; Ex. 26.

In addition, Ms. McCray stated that the GBS and resulting symptoms have caused her to suffer from anxiety and panic attacks in additional to her physical limitations. Ex. 10 at 3, ¶18. She has developed asthma for which she now uses an inhaler, and she takes many medications to control her nerve pain, including Gabapentin, Lidocaine patches, and high doses of Ibuprofen. *Id*. at 4, ¶ 20-21. Ms. McCray states that she is unable to participate in activities that she used to enjoy prior to her GBS diagnosis, including attending church activities, traveling to visit friends, and working in her yard. *Id*. at ¶ 26.

### III. Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

Special masters may consider prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in a specific case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may also rely on my own

experience adjudicating similar claims.[4] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

### IV.     Appropriate Pain and Suffering Award in this Matter

In this case, awareness of the injury is not disputed. The record reflects that at all times, Ms. McCray was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

Ms. McCray's medical records and her affidavit, as well as her witness affidavits, provide a description of the pain she experienced throughout the duration of her injury, and which she deemed significant. Br. at 7-12. She cites to a number of damages decisions involving GBS injuries and highlights the similarities between the petitioners in those cases and her experience with GBS. *Id*. at 18-24. Petitioner therefore submits that a damages award in amount equal to or greater $180,000.00 for past pain and suffering is appropriate in this case. *Id*. at 27.[5]

Respondent, on the other hand, argues that while Ms. McCray has continued to complain of neurological symptoms, "the clinical course and treatment documented by the medical records demonstrates a less severe course of GBS than others the Program has compensated." Opp. at 8. Respondent notes that while some GBS patients require hospitalization/in-patient rehabilitation for months, Ms. McCray was hospitalized for only two weeks, and her inpatient rehabilitation was about 18 days. *Id*.

Respondent also argues that Ms. McCray showed great improvement with treatment. Approximately six months after vaccination, her bilateral lower extremity

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

[5] In particular, Petitioner cited to *Johnson v. Sec'y of Health & Human Servs.*, No. 16-135V, 2018 WL 5024012 (Fed. Cl. Spec. Mstr. July 20, 2018) (awarding $180,000.00 for pain and suffering); *Dillenbeck v. Sec'y of Health & Human Servs.*, 17-428V, 2019 WL 4072069 (Fed. Cl. Spec. Mstr. July 29, 2019) (awarding $180,857.15 for pain and suffering); *Fedewa v. Sec'y of Health & Human Servs.*, No. 17-1808V, 2020 WL 1915138 (Fed. Cl. Spec. Mstr. March 26, 2020) (awarding $180,000 for pain and suffering); *Presley v. Sec'y of Health & Human Servs.*, No. 17-1888V, 2020 WL 1898856 (Fed. Cl. Spec. Mstr. Mar. 23, 2020) (awarding $180,000 for pain and suffering); *Devlin v. Sec'y of Health & Human Servs.*, No. 19-0191V, 2020 WL 5512505 (Fed. Cl. Spec. Mstr. Aug. 7, 2020) (awarding $180,000 for pain and suffering).

weakness was measured at 4/5, but was otherwise normal. Opp. at 8. At Petitioner's December 16, 2020 visit with her neurologist, she had normal muscle strength and tone, a normal gait, normal DTRs (deep tendon reflexes), and "grossly intact" sensation. *Id*. Although Respondent acknowledges that Ms. McCray was still using a cane and reported problems with her balance and muscles spasms, Respondent argues that her medications were effective at controlling her pain. As a result, Respondent proposes an award of $122,0500.00 to be an appropriate pain and suffering award given the facts of this case when compared with other, more severely injured petitioners. Opp. at 9-10.

After reviewing the record in this case and considering the parties' arguments during the hearing, I find that the record best supports the conclusion that Petitioner's condition was moderate to serious on the spectrum of GBS cases. I do, however, acknowledge that (as Respondent argues) Ms. McCray's hospitalization and treatment, although clearly worrisome, was not as traumatic as a GBS patient who may have had to be intubated or who was wheelchair bound – and my calculation of the amount to be awarded tries to take this into account.

The comparable damages determinations from other cases offered by Petitioner were helpful in determining the amount to be awarded in this case. In such cases, where pain and suffering awards ranged from $170,000.00 to $180,000.00, the injured parties experienced similar prognoses (albeit with certain differentiating symptoms) subsequent to the initial hospitalizations. Many of those petitioners could no longer work or were out of work for several months, underwent inpatient rehabilitation or physical therapy, and continued to require medication for pain specifically related to the GBS. *See e.g., Johnson* 2018 WL 5024012, at *7-8; *Dillenbeck* 2019 WL 4072069, at *14; *Fedewa* 2020 WL 1915138, at *6.

Ms. McCray similarly was unable to return to her part-time job, although the impact of her injury on her work life has not been as well substantiated herein as in the prior comparable cases. The record does, however, establish that she is continuing to experience long-lasting treatments and deficiencies specifically related to her GBS. Ex. 23-26. Admittedly, she is slowly making progress and has experienced great improvement, but she has not yet made it back to her baseline status. In her day-in-the life video, while Ms. McCray clearly needed to support herself using her furniture for balance, she was able to independently maneuver around her home and prepare food. She stated that she is working hard to become more and more independent as she was before her GBS diagnosis. Ex. 26.

As I have noted in some of my prior damages decisions, GBS is a serious and frightening vaccine injury, and a pain and suffering award for this specific injury should be calculated with that in mind. Prior to vaccination, Ms. McCray was active and relatively

6

healthy, which likely aids her ongoing recovery, but it also underscores the impact her illness had on her life. She endured weeks of inpatient rehabilitation and several months of physical and occupational therapy. During the months and years following her GBS diagnosis, Ms. McCray continues to suffer a loss of enjoyment of activities in which she once participated. Although she is able to ambulate (mostly) independently, she requires the use of a walking cane and must take a number of medications to treat her nerve pain and asthma.

For these reasons, I find that Respondent's recommendation of $122,500.00 is far too modest. It also is wholly unsupported by comparable decisions, unlike Petitioner's proposed sum. His argument is simply that because Ms. McCray's symptoms, hospitalization, and treatment course for her GBS was somewhat less severe than the petitioners in prior relevant cases, that a lower damages award is warranted. This may be true in part – but it is not an adequate defense of Respondent's preferred figure.

Overall, the severity of Ms. McCray's GBS illness and course of treatment is similar to the petitioners in the comparable cases referenced. However, there are some distinct differences – and they factor into my determination to award a single sum for "actual" pain and suffering, rather than separate components for past and future, as requested.

As a future component, Ms. McCray has requested $1,000 per year for her life expectancy of 20.7 years (reduced to net present value). (Br. at 27). But although Ms. McCray stated that her neurologist indicated that she may never return to her baseline status, she has not presented any medical opinions or evidence to support her proposed award for future pain and suffering. The fact that she is continuing to be treated for GBS is not, in and of itself, enough to support her claim (especially since she seems to be improving with time (*see* generally Ex. 23-26)). And there is not substantial evidence offered herein that GBS has utterly blocked Petitioner's work life (unlike in cases such as *Dillenbeck*). I thus find her projections, without this support, to be too speculative.

Nevertheless, Ms. McCray's residual symptoms appear to be lingering long-term. This, plus the fact that I deem her "actual" pain and suffering to be a little less significant than in the comparable cases (given the somewhat shorter course of treatment), suggests to me that justice can be served by factoring in her potential for future pain and suffering into the actual pain and suffering award. Accordingly, balancing the severity of a GBS injury and Petitioner's personal loss against the relatively moderate severity of disease course and treatment requirements, and considering the arguments presented by both parties at the hearing, a review of the cited cases, and based on the record as a whole, I

find that **$180,000.00** in total compensation for actual/past pain and suffering is reasonable and appropriate in this case.[6]

A final point should be stressed about the award issued in this case. The decisions Petitioner has cited all involve pain and suffering awards for GBS as an injury approximating $180,000.00. This might well make it appear to be that this figure is what petitioners "get" in the Vaccine Program for flu vaccine-caused GBS. But this is incorrect. Petitioners in future cases should not assume that *all* GBS pain and suffering award disputes will be similarly resolved. Many factors regarding each petitioner's case are independently considered in each case. And where Respondent can more persuasively defend a lower sum, that amount will inherently be deemed more credible than in this case.

### V. Other Damages Components.

The parties agree that Ms. McCray shall receive an award of $37,711.00 for her loss of earnings. They also concur that Ms. McCray shall receive an award of $6,679.14 for her past unreimbursable medical expenses. I adopt both figures herein, and include them in the total award.

### CONCLUSION

In light of all of the above, I award **Petitioner a lump sum payment of $244,390.18**, (representing compensation in the amount of $180,000.00 for actual pain and suffering, $37,711.04 for her loss of earnings, and $6,679.14 for her past unreimbursed medical expenses) **in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

The Clerk of the Court is directed to enter judgment in accordance with this decision.[7]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[6] Had I awarded Petitioner the total amount requested for future pain and suffering, I likely would have awarded *less* in actual pain and suffering than has been requested (i.e. $150,000.00 instead of $180,000.00). Thus, the sum I am awarding herein is largely identical.

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.